

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JACQUELINE TERRELL & | ] | |
| PAULA MOORE, | ] | |
| | ] | |
| Plaintiffs, | ] | |
| | ] | CV-05-CO-1069-S (Lead case) |
| vs. | ] | |
| | ] | |
| TYSON FOODS, INC., | ] | |
| | ] | |
| Defendant. | ] | Consolidated with |
| | | |
| PAULA MOORE, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | CV-05-CO-2627-S |
| | ] | |
| TYSON FOODS, INC., | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration two motions for summary judgment,
which were filed by defendant Tyson Foods, Inc. ("Tyson"), on June 29,
2006.  Tyson's first motion requests summary judgment on all claims made

by plaintiff Jacqueline Terrell ("Terrell").  (Doc. 48.)  The second motion asks for summary judgment on all claims made by plaintiff Paula Moore ("Moore").  (Doc. 49.)

Plaintiffs Terrell and Moore originally filed suit in the Circuit Court of Jefferson County, Alabama, on April 26, 2005.  In their complaint, the plaintiffs alleged that Tyson was liable for race discrimination under 42 U.S.C. § 1981; age discrimination under the Alabama Age Discrimination in Employment Act; intentional infliction of emotional distress; and negligent hiring, training, supervision, and retention.[1]  The action was removed to this Court on May 23, 2005.  (Doc. 1, CV-05-1069-S.)  On December 29, 2005, Plaintiff Moore filed a separate complaint against Tyson alleging her termination was improper under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et. seq*.  (Doc. 1, CV-05-2627-S.)  The latter cause was consolidated with Plaintiffs' original action on January 26, 2006.[2]

---

[1]On November 14, 2006, the Court granted Plaintiffs' motion (Doc. 87) to voluntarily dismiss with prejudice their claims for negligent hiring, training, supervision, and retention.  (Doc. 88.)

[2]Unless otherwise noted, all document numbers cited in this opinion correspond to the document numbers in the lead case, CV-05-1069-S.

The issues raised in Defendant's motions for summary judgment have been briefed by both parties and are now ripe for decision.[3]   Upon full consideration of the legal arguments and evidence presented, Defendant's motions for summary judgment will be granted in part and denied in part.

II.   Evidentiary Motions.

As a preliminary matter, the Court will address the evidentiary motions filed by both parties in this action.

A.   Plaintiffs' Motion to Strike Undisclosed Witnesses.

First, Plaintiffs have moved to strike the "affidavits of undisclosed witnesses in their entirety."  (Doc. 62.)  Plaintiffs identify the undisclosed witnesses as Ann Crowe, Lossie Regina Wright, and Betty Couch, and

---

[3]Plaintiffs' counsel had some difficulty filing her response memorandum by the Court's deadline.  Plaintiffs' response was due on August 31, 2006.  On August 31, a Thursday, Plaintiffs' counsel requested a 24-hour extension and asked to submit one combined 100-page response to Defendant's two motions for summary judgment.  (Docs. 66, 67.)  Over the course of the following four days, Plaintiffs filed their evidentiary exhibits, but no legal argument.  A response was finally filed on Tuesday, September 5, 2006, the day after the Labor Day holiday.  With their response, Plaintiffs asked the Court for leave to file out of time and to extend their combined page limit from 100 pages to 146 pages.  (Doc. 76.)  Tyson subsequently filed a motion to strike Plaintiffs' response as untimely.  (Doc. 77.)  Plaintiffs' motion to file out of time and extend their page limit is granted; therefore, the earlier requests for a 24-hour extension and combined 100-page brief are moot.  Tyson's motion to strike will be denied. However, Tyson's motion to extend their time to reply (Doc. 78) is also granted.

contend that their testimony, as well as any references to such testimony, must be excluded pursuant to Fed. R. Civ. P. 37.

Tyson argues that the declarations of Ann Crowe and Lossie Regina Wright were submitted as potential impeachment evidence, which is exempt from the disclosure requirements outlined in the Federal Rules.  (Doc. 80.) Defendant concedes, however, that the plaintiffs have not made the allegations in their response to summary judgment that Tyson expected to rebut in its reply submission; therefore, Tyson's summary judgment submissions do not rely on these statements.  For the purposes of summary judgment then, the Court will strike the affidavits of Ann Crowe and Lossie Regina Wright.

Defendant argues, however, that use of Betty Couch's declaration in this action is entirely proper.  While Tyson did not specifically identify Ms. Couch in their initial or supplemental disclosures pursuant to Fed. R. Civ. P. 26, Defendant did list "other employees who were employed by Defendant during the time of Plaintiffs' employment."  (Doc. 80 at 2.)  Moreover, Plaintiffs themselves named Ms. Couch in their initial disclosures, and have alleged that Ms. Couch is a comparator in this matter.

According to Fed. R. Civ. P. 37(c)(1), parties are not prohibited from using the statements of undisclosed witnesses if the failure to disclose is harmless.  Plaintiffs have known of Ms. Couch's identity since at least August 2005, when she was listed in Plaintiffs' initial disclosures.  (Doc. 80 at Ex. A.)  Plaintiffs' counsel maintains that she was never provided with contact information for Ms. Couch, but she also does not allege that she ever asked for the contact information.  Furthermore, Ms. Couch has submitted an additional uncontested declaration stating that she has lived in the same house for thirty years and Plaintiff Moore has called her both at home and at work, which indicates that Plaintiffs had Ms. Couch's contact information all along.  (*Id.* at Ex. B.)

Plaintiffs will not be unduly prejudiced by Tyson's use of Ms. Couch's declaration.  To the extent her testimony is material, it reiterates additional evidence proffered by the defendant.  Therefore, the Court will deny Plaintiffs' motion to strike the declaration of Betty Couch in its entirety.

B.    Plaintiffs' Motions to Strike Portions of Declarations.

Plaintiffs have filed motions to strike portions of the declarations of Betty Couch (Doc. 84),  Debra Tidwell (Doc. 98), Lola Hithon (Doc. 99), and

Chris Honea (Doc. 100). In their motions to strike, Plaintiffs identify each paragraph number they want stricken and argue that the testimony is conjecture, hearsay, vague, general, not reasonably based on personal knowledge, irrelevant, not limited in time or stating a time frame, improper opinion evidence, and/or inconsistent with prior deposition testimony. For the reasons outlined below, the motions will be denied, but the Court will strike the two attorney questions written in all-caps in paragraph 12 of Debra Tidwell's declaration, which both parties agree does not reflect the witness' testimony.

The Court has reviewed Plaintiffs' allegations that statements in declarations submitted by Tyson conflict with the prior deposition testimony of the declarants, and the Court has not found any material inconsistencies. Plaintiffs cite *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984), for the proposition that "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." (*See, e.g.*, Doc. 100 ¶ 6.) Since it is to

Plaintiffs' advantage at summary judgment to show that there are, in fact, genuine issues of material fact, the Court does not entirely comprehend Plaintiffs' desire to strike defense witness' testimony they argue is conflicting.  Regardless, if the testimony was materially inconsistent as alleged, the Court would oblige Plaintiffs' request.  A review of the evidence, however, shows that the alleged conflicts do not meet the standard outlined in *Van T. Junkins & Assocs*.

For instance, in one of Plaintiffs' motions to strike, they argue that "Honea never testified that he revised the [OSHA] log prior to producing the log to the OSHA inspector. . . .  Rather his testimony reflected revisions after the inspection when the logs were corrected by 'they,' meaning the nurses in the department."  (Doc. 100 ¶ 10 (citing Honea Dep. at 202-04, 231).) However, a review of Mr. Honea's deposition shows that he testified, in reference to the production of the log to an OSHA inspector, "*After, you know, some of the information that I saw was fixed*, there was [sic] still issues with some of our information in column F."  (Honea Dep. at 203 (emphasis added).)  He later testified that after the inspection, "The –- the logs, they [the nurses] went back and wrote diagnosises (sic) and corrected

column F." (*Id.* at 231.)  These deposition statements are not so clear that they obviate Mr. Honea's later testimony that he made revisions to the OSHA log prior to giving the log to the OSHA inspector.

To the extent Plaintiffs argue that a declarant's testimony is irrelevant, lacking personal knowledge, vague, or otherwise improper, the Court has noted and considered these characterizations.  The materiality, relevancy, and potential admissibility of evidence at trial was carefully weighed by the Court during the summary judgment process.  Immaterial evidence, irrelevant evidence, and other evidence that could not be reduced to admissible form at trial, *see Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999), was rejected by this Court when making its final decision on Defendant's summary judgment motions.

C.    Plaintiffs' Motion to Strike Tyson's Bernice Byers Declaration.

Finally, Plaintiffs have moved to strike the April 2006 declaration of Bernice Byers, which was submitted by Defendant, in its entirety.  (Doc. 65.) In support of their motion, Plaintiffs attach an affidavit in which Ms. Byers testifies that it is her signature on the April 2006 declaration, but she reviewed a different document than the one she signed for Tyson, and some

of the statements made in the declaration submitted by the defendant are not her testimony.  (Doc. 65 at Ex. 2.)

Ms. Byers has signed a total of four declarations or affidavits in this matter: two for the defendant (October 2005 & April 2006) and two for the plaintiffs (July 2005 & July 2006).  Defendant correctly points out in its opposition to Plaintiffs' motion to strike that Ms. Byers' July 2006 affidavit refutes testimony in the April 2006 declaration that is also stated in her October 2005 declaration.  In addition, this Court held a hearing on March 7, 2007, and allowed defense counsel to question Ms. Byers under oath regarding her statements.  At that hearing, Ms. Byers testified that the statements in her October 2005 declaration are true, refuted the validity of portions of the July 2006 affidavit that has been submitted by Plaintiffs, but stood by her testimony that she did not read and agree to certain statements that were made in the defense declaration signed in April 2006.

If this Court was permitted to make a credibility finding with regard to Ms. Byers' testimony in this case, it would be that Ms. Byers has little to no credibility.  However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Ms. Byers' testimony—in all its forms—will remain in the record as it appears. Because Ms. Byers states in her July 2006 affidavit that portions of her April 2006 declaration are, in fact, her testimony and she did sign the document, the Court will deny Plaintiffs' motion to strike.  For purposes of summary judgment, the Court will treat all admissible testimony by Ms. Byers as true and in the light most favorable to Plaintiffs.

  D. Defendant's Motions to Strike Portions of Plaintiffs' Affidavits.

  Defendant has filed motions to strike portions of both Terrell and Moore's affidavits as contradictory to prior sworn testimony, inadmissible hearsay, and/or not based on personal knowledge.  (Docs. 103, 104.)

  First, Defendant argues that paragraph ten of Terrell's affidavit, which states that she told individuals at Tyson that Mr. Honea failed to record the injury and treatment of an employee, conflicts with Terrell's earlier sworn testimony, in which she named two other white nurses as her only

comparators.  (Doc. 104 ¶ 3.)  As stated earlier, the law in this circuit is that affidavits may be disregarded as a "sham" when "a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, [and the party] thereafter create[s] such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984).  While the Court acknowledges that Terrell's testimony in her affidavit differs from her previous testimony that she thought two white female nurses were treated better than she was after making similar mistakes, her deposition statement was not an answer that "negate[s] the existence of any genuine issue of material fact" in this case. Therefore, the Court will not strike her new allegation regarding Mr. Honea as "sham" testimony.

The Court's ruling is the same with regard to Defendant's motion to strike paragraphs three and nine in Moore's affidavit.  Because the prior deposition testimony did not negate the existence of any genuine issue of material fact, Moore's subsequent statements in her affidavit will not be stricken as "sham" testimony.

The last sentence of paragraph twenty-one of Moore's affidavit, however, is "sham" testimony and will be stricken.  In her affidavit, Moore says, "I did not presign Mrs. Terrell's form."  (Moore Aff. ¶ 21.)  However, when Moore discussed giving paperwork to Terrell in her deposition and was asked, "But you pre-signed it?," Moore said, "Yes, I did."  (Moore Dep. at 227.)  Moore's earlier deposition testimony negates the existence of any genuine issue of material fact regarding whether she engaged in a specific act of misconduct for which she now says she was disciplined unfairly.  Because Moore has not given any explanation for the change in her testimony, this statement in her affidavit will be stricken.

The Court will also grant Defendant's request to strike paragraph twenty-three of Moore's affidavit, as well as "Exhibit C."  This testimony refers to documents that have not been filed in this case.[4]

However, the Court's ruling with regard to Defendant's objections to Plaintiffs' affidavit testimony as inadmissible hearsay or lacking personal knowledge, is the same as the one the Court gave Plaintiffs earlier in this

---

[4]On February 26, 2007, this Court denied Plaintiffs' request to file the referenced documents.  (Doc. 96.)

opinion.  The potential admissibility of evidence at trial was carefully weighed by the Court during the summary judgment process.  Evidence that could not be reduced to admissible form at trial, *see Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999), was rejected by this Court in making its final decision.

    E.    Defendant's Motions to Submit Additional Evidence.

Tyson has filed two motions to submit additional evidentiary exhibits in support of their motions for summary judgment.

The first motion requests permission to add two declarations of Bernice Byers to Defendant's evidentiary submission.  (Doc. 91.)  That motion is moot.  All four of Ms. Byers' declarations or affidavits have been filed with the Court and have been referenced for consideration at summary judgment.  It is not necessary for Tyson to make a formal addition to its evidentiary submission.

Defendant also asks to file the original medical records from the occupational health file of a Tyson employee.  (Doc. 105.)  As support for its motion, Defendant points out that the color of the paper in the medical record has become an issue in this case.  The Court understands that

Plaintiff Terrell has submitted an affidavit that references another nurse's notes on white paper.  In its motion to strike a portion of that affidavit, Tyson objected to Ms. Terrell's testimony, stating that she is not competent to testify about the color of the paper and has no personal knowledge about the color of the paper.  (Doc. 104 ¶ 5.)  Defendant's objection has been noted.  Tyson would now like to submit the original medical record to show that the paper in question is, in fact, pink.  If Ms. Terrell's testimony is improper, however, this is no reason to submit the original medical record. If Ms. Terrell's testimony is proper, the submission of the medical record only creates an issue of fact as to the color of the paper in question. Therefore, Defendant's motion to submit the original medical record in support of summary judgment will be denied.

III.    Facts.[5]

Plaintiffs Jacqueline Terrell and Paula Moore are both African-American female Licensed Practical Nurses ("LPN") over the age of forty. Tyson hired Moore on March 22, 1988, to work as a nurse in the occupational health services department at its Gadsden, Alabama, facility.  Terrell was hired by Tyson on March 22, 1993, to work as a nurse in the same department.

While employed with Tyson, Plaintiffs' job duties included "providing primary and emergency care to Tyson employees, assisting with the administration of workers' compensation cases, performing post-offer health assessments and other specified assessment programs[,] and maintaining OSHA, state[,] and team member (or "TM") health records."  (Docs. 56, 57 ¶ 6.)  Plaintiffs were also responsible for "documenting team member treatment with nurse's notes, making updates to the OSHA logs, logging in

---

[5]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

OSHA injuries or illnesses, keeping up with lost-time accidents, monitoring potential safety hazards and ergonomic problems, and conducting plant tours to ensure that team members and supervisors were complying with physician orders and work restrictions."  (Docs. 56, 57 ¶ 7.)

In August 2003, an OSHA inspection was conducted at the Gadsden facility.  After the inspection, Bernice Byers, the Nursing Supervisor and an African-American, was disciplined for deficiencies discovered in the OSHA 300 log.  Plaintiffs Terrell and Moore also received a serious counseling statement because of the alleged deficiencies.  Caucasian nurses Betty Couch and Louise Lovell did not receive similar discipline.

On February 9, 2004, Plaintiff Terrell received a second serious counseling statement for failing to document interactions with Tyson employees promptly after care was given and failing to properly document late entries.  Following a suspension and investigation, Tyson terminated Terrell's employment on February 18, 2004.

On February 9, 2004, Plaintiff Moore also received a second serious counseling statement for failure to document treatment to a Tyson employee and failure to notify the Human Resources and Benefits

departments regarding a leave of absence.  Moore was suspended, but returned to work following the company's investigation.

Tyson subsequently required Moore to complete an action plan for her performance.  Moore received a day off with pay to complete the action plan, and she was told that she could have access to any resources she wanted to copy and use.  Moore presented a hand-written draft of her plan to her supervisors and was counseled and suspended for three days for failing to finish the action plan.  Moore completed an action plan to Tyson's satisfaction on April 13, 2004.

On June 7, 2004, Moore was issued another serious counseling statement, which claimed she had made a number of documentation errors and failed to perform walkthroughs as required.  Moore disputes that she committed the infractions, but testified that the documentation errors would have constituted violations of her action plan.  Moore was suspended on June 7, pending an investigation for possible termination.

The next day, June 8, 2004, Moore notified Tyson's Benefits department that she needed to take FMLA leave.  She later received a letter

dated June 16, 2004, which informed her that her employment with Tyson was terminated.

IV.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving

party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

V.    Analysis.

A.    42 U.S.C. § 1981.

Plaintiffs have alleged that Tyson is liable under § 1981 because they were singled out for discipline and ultimately terminated due to their race.[6]

---

[6]While Plaintiffs state in their response to summary judgment that they have "Section 1981 and Title VII" race claims (Doc. 75 at 106), no claims under Title VII appear anywhere in Plaintiffs' complaints, and the complaints in this action have never been amended to add Title VII claims. Plaintiffs cannot add new legal claims in response to summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *see also Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir. 2006). Therefore, Plaintiffs' alleged Title VII claims are

(Docs. 1 at 6; 75 at 106.)  Defendant argues that Plaintiffs' § 1981 claims should be dismissed.

"When § 1981 is used as a remedy for employment discrimination, the elements required to establish a claim are the same as those required for a claim under Title VII of the Civil Rights Act of 1964." *Riley v. Emory Univ.*, 136 Fed. Appx. 264, 266 (11th Cir. 2005) (citing *Howard v. B.P. Oil Co.*, 32 F.3d 520, 524 n.2 (11th Cir. 1994)).  Because Plaintiffs have not asserted that they have direct evidence of discrimination, we analyze their § 1981 claims using the analytical framework established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998).  First, Plaintiffs must establish a prima facie case of discrimination.   Once established, the prima facie case creates a presumption of discrimination, and "[t]he employer must then offer legitimate, nondiscriminatory reasons for the employment action to rebut the presumption."  *Id*.  "If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff

---

not properly before this Court.

to discredit the proffered nondiscriminatory reasons by showing that they are pretextual." *Id.*

For summary judgment purposes, Tyson has conceded that Plaintiffs have established a prima facie case of race discrimination with regard to their termination.[7] (Doc. 101 at 3 n.6.) However, Tyson contends that both women were terminated for making numerous policy and practice violations "after extensive counseling, coaching and training" to improve their work performance. (Doc. 56 at 34-35; 57 at 33-34.) Specifically, Terrell and Moore received two serious counseling statements in less than twelve months. (*Id.*) Plaintiffs do not argue that Tyson has not met its legal burden of producing legitimate, nondiscriminatory reasons for their terminations. Therefore, if the plaintiffs do not "proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant's articulated reasons is pretextual, [Tyson] is entitled to summary judgment" on the § 1981 claims. *Price v. M & H Valve Co.*, 177 Fed. Appx. 1, 12 (11th Cir. 2006) (quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25) (11th Cir. 2000) (en banc)).

---

[7]It is undisputed that both plaintiffs were replaced by Caucasian nurses.

There are a number of different ways for a plaintiff to establish at summary judgment that a jury question exists as to whether an employer's proffered legitimate, non-discriminatory reasons are pretext for discrimination.  Three types of pretext evidence include: "1) comparative evidence; 2) statistical evidence; and 3) direct evidence of discrimination, in the form of discriminatory statements and admissions." *Miles v. M.N.C. Corp.*, 750 F.2d 867, 870 (11th Cir. 1985).  A plaintiff may also present evidence showing the employer's reasons are false. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1532-33 (11th Cir. 1997).  Plaintiffs Moore and Terrell do not argue that they have direct evidence of racial discrimination, and the Court has not found any such evidence in the record.  Plaintiffs do, however, attempt to use both comparative and statistical evidence in support of their claims.

The bulk of Plaintiffs' argument focuses on comparative evidence. Both Moore and Terrell contend that white nurses at Tyson's Gadsden facility made mistakes similar to their own and were not disciplined in the same manner.  Plaintiffs name four white nurses: Louise Lovell, Betty Couch, Chris Honea, and Debra Tidwell, as comparators in this matter.

(Doc. 75 at 111.)  Plaintiffs also claim that Charlotte DeForest, another white nurse, made the same error as Moore while working as a temporary nurse, but she was subsequently hired as a full-time replacement.  (Doc. 75 at 109.)

"To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that [s]he and the employees are similarly situated in all relevant respects."  *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997); *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir.)*, reh'g en banc denied*, 116 Fed. Appx. 257 (11th Cir. 2004).  "The most important factors in the disciplinary contexts are the nature of the offenses committed and the nature of the punishments imposed."  *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001)*, cert. denied*, 535 U.S. 1013 (2002) (ellipses omitted).  "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present."  *Holifield*, 115 F.3d at 1562.

Upon review of the evidence submitted in this case, it is immediately clear that Plaintiffs have not established that any similarly situated white

nurses at the Gadsden facility received two serious counseling statements in a time period of less than twelve months.  There is also insufficient evidence that similarly situated white nurses were disciplined for a similar number of policy and practice violations of the same type and/or severity despite "extensive counseling, coaching and training" to improve their work performance.  However, because Tyson's reasons for both Moore and Terrell's terminations involve their "cumulative record" of policy violations, Plaintiffs may establish pretext by showing that any part of the disciplinary process was racially motivated.  *See Busby v. City of Orlando*, 931 F.2d 764, 781 (11th Cir. 1991).

Plaintiffs attack Tyson's explanations regarding the (first) serious counseling statements both women received following an OSHA inspection in August 2003.  Moore and Terrell argue that the disciplinary statements show pretext for race discrimination because only African American nurses at the facility were written up for alleged deficiencies found in the OSHA 300 log, and none of the white nurses working at the facility (Betty Couch and Louise Lovell) received similar discipline.  Plaintiffs also contend that

they have presented substantial evidence that the serious counseling statements were issued under false pretenses.

In his declaration, Chris Honea, then Complex Nurse Manager, testified that OSHA conducted an onsite investigation at Tyson's Gadsden facility in August 2003. (Honea Decl. ¶ 5.) Mr. Honea stated that when OSHA requested to view the facility's OSHA 300 log, he "spent close to four hours reviewing the log and making sure it was accurate." (*Id.*) After finding extensive errors in the log, Mr. Honea says that he "made every possible revision prior to giving it to the OSHA inspector." (*Id.*) According to Mr. Honea, it is "because of the revisions [he] made, [that] the OSHA inspector did not issue any citations and only offered recommendations." (*Id.* ¶ 6.) Mr. Honea then describes his subsequent interactions with Bernice Byers (African American), the Nurse Supervisor:

> After the inspection I met with Ms. Byers on August 20, 2003. I issued to Ms. Byers a serious counseling statement for the OSHA 300 log violations I had found prior to the inspection. As the RN Nurse Supervisor, I was holding Ms. Byers responsible for the failure of her nurses to keep an accurate log. I instructed Ms. Byers that I expected her to, in turn, discipline the nursing staff. Because she does not type well, I provided Ms. Byers a template on the

> computer for issuing serious counseling statements.
> . . . I recall that it was Ms. Byers who concluded that
> she would not counseling [sic] Ms. Lovell because she
> had not been trained.  I agreed with this conclusion.
> . . . I also recall that Ms. Couch did not receive a
> counseling statement because she worked part-time
> and only the full-time staff was responsible for the
> OSHA record.

(*Id*.)  In her July 2006 affidavit, however, Ms. Byers states that the decision

to issue disciplinary statements to Terrell and Moore was Mr. Honea's

decision—not hers; that she disagreed with issuing discipline to the nurses;

and that it was her belief that Ms. Lovell had sufficient training.  (Byers Aff.

July 2006 at 7-8.)  Ms. Byers' affidavit does concur with Mr. Honea on one

issue: Ms. Couch was a part-time nurse and not required to keep the OSHA

log.  (*Id*. at 6.)

    Ms. Byers' testimony disputes Mr. Honea's account regarding the

decisionmaking process involved in issuing serious counseling statements

after the August 2003 OSHA investigation.  Moreover, Plaintiffs point to Ms.

Lovell's performance evaluation for the October 2002 through March 2003

review period, which appears to have been signed on May 26, 2003, by both

Ms. Lovell and Ms. Byers.  (Doc. 73, attach. 6.)  On page three of that

evaluation, under the third goal of "More efficient handling of OSHA record keeping," it reads, "We are seeing less mistake that have to correct on this log. [sic] *Also everyone is trained on how to maintain*.  I feel this is important."  (*Id*. at 3 (emphasis added).)  This evidence conflicts with Mr. Honea's statement that Ms. Lovell "had not been trained."

Furthermore, there is other evidence in the record that, when viewed in the light most favorable to the plaintiffs, calls into question other portions of Mr. Honea's description of the events surrounding the discipline issued for mistakes made in the OSHA log.  First, the counseling statements issued to both Terrell and Moore reference "problems . . . identified *after* the OSHA 300 review conducted as a result of an OSHA inspection on August 12, 2003" (Doc. 55, attach. 18; Doc. 58, attach. 16 (emphasis added)); Mr. Honea testified that he found the errors *before* the OSHA inspector conducted a review of the OSHA 300 log.  Mr. Honea also said that he spent "close to four hours" reviewing the log and making revisions before turning over the OSHA 300 log to the inspector, but Tyson's documentation of the OSHA visit shows that: the inspector arrived at the facility at 2:15 pm on August 13, 2003; necessary Tyson employees were summoned; questions

were asked; the OSHA 300 log for 2002 and 2003 was requested and provided by Mr. Honea; and by 4:20 p.m., the inspector had moved on.  (Doc. 69, attach. 12.)  There is no testimony that the OSHA 300 log was requested prior to the inspector's arrival at the facility.  Defense counsel attempts to clarify in their brief that Mr. Honea's four hours also included time spent correcting errors in 301 forms that were requested after the OSHA 300 log was produced, but that distinction is not at all clear from the evidentiary citations referenced.  (Doc. 101 at 18.)

Finally, Plaintiffs proffer an audit conducted from April 30, 2003, to May 2, 2003, which says that the Gadsden facility scored 100% overall on OSHA recordkeeping.  Taken in the light most favorable to the plaintiffs, the audit shows that, at least at the end of April 2003, the OSHA log was "Current, Legible, Accurate"; had "Correct Column Totals"; OSHA 301 was completed; and lined out cases were completed.  (*Id*.)  While Defendant correctly points out that this audit does not establish that mistakes were not made after April 2003 and before the OSHA inspection in August, when this evidence is considered cumulatively with the other evidence discussed above, there is certainly enough for a reasonable jury to conclude that

Tyson is not being honest about the reasons serious counseling statements were issued only to African American nurses in August 2003.  A reasonable jury could also conclude that an inference of racial discrimination is strengthened by the fact that both Moore and Terrell were subsequently disciplined and suspended again on the same day: February 9, 2004.

Because Plaintiffs have presented sufficient evidence to create a genuine issue of fact with regard to whether Defendant's reasons for issuing their first serious counseling statement constitute pretext for race discrimination, and the evidence shows that this discipline was considered in the final decision to terminate Plaintiffs, summary judgment must be denied on Plaintiffs' § 1981 race discrimination claims.

B.      Alabama Age Discrimination in Employment Act.

Plaintiffs also allege that Defendant is liable under the AADEA because younger nurses did not suffer the same discipline as the plaintiffs when they committed the same or similar offenses.[8]  The parties agree that Plaintiffs' AADEA claims are also analyzed under the *McDonnell Douglas* framework,

---

[8]In their response brief, Plaintiffs also say they have a federal age discrimination claim. (Doc. 75 at 119.)  No references to the federal Age Discrimination in Employment Act (ADEA) appear in Plaintiffs' complaints; therefore, an ADEA claim is not before this Court.

*see Bonham v. Regions Mortgage, Inc.*, 129 F. Supp. 2d 1315, 1321 (M.D. Ala. 2001), and Tyson once again assumes for the purposes of summary judgment that Moore and Terrell have established a prima facie case.[9]  As stated above, Tyson has also proffered its legitimate, nondiscriminatory reasons for Plaintiffs' terminations: they were terminated for making numerous policy and practice violations "after extensive counseling, coaching and training" to improve their work performance.   (Doc. 56 at 34-35; 57 at 33-34.) Specifically, Terrell and Moore received two serious counseling statements in less than twelve months.  (*Id.*)  The issue, then, is whether Plaintiffs have adduced sufficient evidence to show that Tyson's reasons are pretext for age discrimination.

Plaintiffs do not present any direct evidence nor statistical evidence of age discrimination.   Again, Plaintiffs' argument appears to focus on comparative evidence.  However, Moore and Terrell give short shrift to their age claim in their response submission.   The bulk of their legal argument focuses on the treatment of "white nurses" versus "African American nurses."   This Court could only find three instances where Plaintiffs

---

[9]It is undisputed that both Moore and Terrell were replaced by younger nurses.

compared themselves to a "younger" individual, someone "under the age of forty," or described an instance of discipline as "age discrimination." (Doc. 75 at 111, 116, 133.)

First, the Court will address Plaintiffs' contention that they have presented sufficient evidence for a jury to conclude that their first serious counseling statement following the August 2003 OSHA inspection "was issued to mask . . . age discrimination." (*Id.* at 116.)  Other than this conclusory statement, Plaintiffs do not make any further age-based arguments regarding the OSHA-related discipline.  In fact, they immediately follow this assertion with the statement: "it was inequitably and adversely issued to only African Americans." (*Id.*)  The evidence in this case shows that the August 2003 serious counseling statements were issued to all currently employed African American nurses, and white nurses Betty Couch and Louise Lovell were not disciplined.  The undisputed evidence, however, shows that both Ms. Couch and Ms. Lovell are *older* than Plaintiffs.  In short, Moore and Terrell have not presented any evidentiary support for their contention that this particular counseling statement was pretext for intentional discrimination against older employees.

It appears from Plaintiffs' remaining argument that they contend that Chris Honea, Debra Tidwell, and Charlotte DeForest are the "younger" nurses who were not disciplined for making the same or similar mistakes. As explained above, however, when a plaintiff attempts to compare alleged "similarly situated individuals to raise an inference of discriminatory motivation, the individuals must be similarly situated in all relevant respects besides [age], since different treatment of dissimilarly situated persons does not violate civil rights laws." *Jackson v. Bellsouth Tellecomms.*, 372 F.3d 1250, 1273 (11th Cir. 2004) (internal citations and quotations omitted). The undisputed evidence in this case shows that both Mr. Honea and Ms. Tidwell held supervisory positions over Plaintiffs and performed different job duties at Tyson's Gadsden facility. Ms. DeForest was a contract nurse employed not by Tyson—but by a temporary nursing agency.[10] These individuals are not "similarly situated in all relevant respects" to Plaintiffs; therefore, they are not proper comparators in this matter.

---

[10]Moreover, the single documentation error attributed to Ms. DeForest is not "nearly identical" to the misconduct attributed to either of the plaintiffs in the course of the disciplinary process. *See Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) ("It is "require[d] that the quantity and quality of the comparator's misconduct be nearly identical."); *see also Burke-Fowler v. Orange County, Florida*, 447 F.3d 1319, 1323 n.2 (11th Cir. 2006) (reaffirming the "nearly identical" requirement).

Because Plaintiffs have failed to adduce sufficient evidence that their termination from Tyson was pretext for illegal age discrimination, summary judgment will be granted on their AADEA claims.

C.    Family and Medical Leave Act.

Plaintiff Moore asserts that her termination from Tyson also constituted retaliation for exercising her rights under the FMLA. Defendant contends that Moore was terminated for performance issues, and points out that she was suspended pending an investigation into alleged misconduct one day before she requested FMLA leave.

"The FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001). In order to succeed on a retaliation claim under the FMLA, a plaintiff must "demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Id.* at 1207.

"When evaluating a FMLA retaliation claim [in the absence of direct evidence], we use the burden shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1314 (11th Cir. 2001).  In order to establish a prima facie case, "a plaintiff must show that he engaged in statutorily protected conduct, he suffered adverse action, and there is a causal connection between the protected conduct and the adverse action."  *Id.*; *see also Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000).  "If the plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a legitimate reason for the adverse action."  *BellSouth Telecomms., Inc.*, 273 F.3d at 1314.  "If the defendant does so, the plaintiff must show the defendant's proffered reason for the adverse action is pretextual."  *Id.*

Tyson argues that Moore cannot establish a causal connection between her FMLA leave and termination.  Defendant cites to *Clark County School Dist. v. Breeden*, 532 U.S. 268 (2001), in support of its contention.  In *Breeden*, the U.S. Supreme Court contemplated a Title VII retaliation claim in which the defendant presented evidence that it had contemplated a disputed transfer of the plaintiff prior to learning about her Title VII lawsuit.

The Court held: "Employers need not suspend previously planned" employment actions upon discovering that the employee has engaged in alleged protected activity, "and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Id*. at 272.

The Supreme Court's rationale has since been applied by the Eleventh Circuit to FMLA retaliation claims.  In *Drago v. Jenne*, 453 F.3d 1301 (11th Cir. 2006), the appellate court wrote: "We hold that, in a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation."  *Id*. at 1308.

It is undisputed in this case that Moore was suspended on June 7, 2004, for alleged performance issues.  Tyson has proffered unrebutted testimony that Moore's supervisors recommended termination at the time of her suspension, and Moore was subsequently notified that she was being terminated because of her work performance.  The protections of the FMLA were not intended to allow suspended employees to stave off terminations

for misconduct or poor performance simply because they immediately request FMLA leave.  Plaintiff Moore has failed to establish a causal connection between her termination and FMLA leave.

Even if this Court assumed Moore had presented a prima facie case, she has not proffered any evidence that Tyson's legitimate, nondiscriminatory reasons for her termination (her cumulative work performance and last serious counseling statement) were pretext for FMLA retaliation.  Moore argues that Tyson's argument in its memorandum in support of summary judgment gives a different reason for her termination—that she was actually terminated prior to her suspension and should have never received FMLA leave—and contends that a reasonable jury could infer from this change in reasoning that Tyson retaliated against Moore for engaging in protected activity under the Act.  (Doc. 75 at 144.)  A review of Tyson's brief reveals that no such conflict exists.  Therefore, Tyson is entitled to summary judgment on Moore's FMLA retaliation claim.

D.    Outrage.

Finally, both Plaintiffs claim that Tyson is liable under Alabama law for intentional infliction of emotional distress, or outrage.  They contend that

the discrimination they suffered at Tyson made them feel humiliated, nitpicked, "stressed out," and "Moore would often lie in bed crying at night."  (Doc. 75 at 138.)

The Alabama Supreme Court describes the tort of outrage as follows:

> The emotional distress caused by the defendant's conduct must be so severe that no reasonable person could be expected to endure it. . . . By extreme, we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

*Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000) (internal citations and quotations omitted).  Moreover, "[t]he tort of outrage is an extremely limited cause of action."  *Id*.  "It is so limited that [the Alabama Supreme Court] has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment."  *Id*. (internal citations omitted).

There is no evidence to support Plaintiffs' contention that Defendant's alleged conduct meets the standards outlined above, or that Terrell and Moore have suffered emotional distress so severe that no reasonable person

could be expected to endure it.  Therefore, Plaintiffs' outrage claims do not survive summary judgment.

VI.     Conclusion.

In accordance with the rationale outlined above, Defendant's motions for summary judgment are due to be granted with regard to Plaintiffs' AADEA, FMLA, and outrage claims.  Summary judgment will be denied as to Plaintiffs' race discrimination claims under § 1981.  A separate order will be entered.

Done this <u>29th</u> day of <u>March 2007</u>.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153